. Bartoli vs. Huguenard.

---

## No. 9602.

### LOUIS BARTOLI VS. VIRGINIE HUGUENARD, HIS WIFE.

The statement, contained in the order of appeal, that there is not sufficient time to prepare the record by the next regular return day for appeals from the court *a qua*, even if suggested by appellant's counsel, must be held as adopted by, and as emanating from, the trial judge.

39 411
46 1494

39 411
49 970

39 411
52 1879

39 411
f120 276

Bartoli vs. Huguenard.

Hence, the Court will not consider *ex parte* certificates, or affidavits, or other evidence outside of the record, touching the alleged error of such a statement.

Under Section 4 of Act 45 of 1870, Extra Session, the trial judge has the legal discretion to fix a different return day if time is required to prepare the record for appeal, and the Supreme Court will not presume that he has abused of the discretion vested in him by law.

There can be no reckoning between the spouses *inter sese* as to the *quantum* of labor bestowed, or capital by either withdrawn, during the existence of the community.

The distinct interest of the wife attaches at the dissolution of the marriage; but neither spouse can sue for half the price of any specific thing acquired during the marriage, when the liquidation of the community does not show any *gains* to be divided.

The value of improvements and ameliorations made, upon separate property of either spouse, during the marriage, is at the expense of the community, *only* when it is *not* due to the ordinary course of things, to the rise in the value of property, or the chances of trade.

APPEAL from the Twenty-fourth District Court, Parish of Plaquemines. *Livaudais, J.*

---

### *F. C. Zacharie* and *F. Michinard* for Plaintiff and Appellant:

1. Revenues of paraphernal property of either spouse, during marriage, form part of the community, when the husband has had the administration of the same. R. C. C. 2386, 2402, 2406; 16 L. 1; 17 L. 296; 19 L. 574; 3 Ann. 611; 4 Ann. 248; 6 Ann. 634.

2. The wife and her heirs and assigns have the privilege of exonerating themselves from the debts contracted during the marriage, by renouncing the partnership or community of gains. R. C. C. 2410.

3. The wife who renounces loses every sort of right to the effects of the partnership or community of gains. R. C. C. 2411.

4. The wife separated from bed and board, who has not, within the delays above fixed to begin from the separation finally pronounced, accepted the community, is supposed to have renounced the same; unless, being still within the term, she has obtained a prolongation from the judge, after the husband was heard, or after he was duly summoned. R. C. C. 2420.

5. She ought also to make her renunciation within the same delays which are allowed the beneficiary heirs within which to explain his intentions. R. C. C. 2414; 12 Ann. 76; 15 Ann. 416.

6. Under R. C. C. art. 1032, the duty is imposed upon the beneficiary heir of having an inventory of the succession made. Under Art. 1050, R. C. C., he is given thirty days within which to deliberate whether he will accept or reject the succession. 12 Ann. 76; 15 Ann. 416.

### *E. Howard McCaleb* for Defendant and Appellee:

1. Where the witness is neither dead nor absent, but shown to be present in the parish at the time of the trial, and his attendance could have been compelled by an attachment, testimony taken in a former suit between the same parties is not admissible, if objected to. 6 N. S. 351; 5 L. 364.

2. The renunciation of the community is presumed from the mere silence of the wife separated by judgment *a mensa et thoro* during the time prescribed by law. 11 Ann. 70; 12 Ann. 76; 15 Ann. 416.

3. The separate property of the wife, not shown to have been increased or improved during the marriage, by the common labor and expense, cannot be held liable to the husband especially where the increase, if any, is attributable to the ordinary course of things. R. C. C. 2408.

Bartoli vs. Huguenard.

4. One-half of the enhanced value of the wife's separate property, at the dissolution of the marriage, caused by improvements made thereon by the community, must be accounted for by her on final settlement. 4 R. 278; 6 R. 508; 10 R. 373. The compensation due the community is regulated by the value of the improvements at the time of the dissolution of the marriage. 8 R. 182; 12 R. 389, 390; 2 Ann. 30. Here no improvements were made on the wife's property during marriage, consequently she owed nothing at its dissolution.

5. The increase in the annual sales of the orange crops, due to the fertility of the soil and not proven to have been the result of the common labor of the spouses, creates no liability on the part of the wife or her separate estate. 10 Ann. 258.

6. There is a striking analogy recognized by law between the relations of the usufructuary and the owner and the community to the wife as regards her paraphernal property. 6 Ann. 636; 10 R. 46

7. The community cannot recover for ordinary repairs made, nor for taxes paid upon the wife's property. For such expenditures the usufructuary, and not the owner, is liable. R. C. C. 571–578. The wife cannot be held for the fruits of her paraphernal property administered by her husband and consumed during the existence of the community.

## On Motion to Dismiss

The opinion of the Court was delivered by

Poché, J. The ground of the motion is error in the return day, imputable to appellant.

The order of appeal bears date October 16, 1885, and the appeal is made returnable on the first Monday of December following; to the order is added the statement, "there not being time to prepare the transcript for the next ensuing term."

It is contended, and it is not denied, that the return day was suggested by appellant's counsel. The question is therefore the alleged error of the return day.

The law of the case is Act No. 45 of the Legislature, approved March 16, 1870.

Under its first section, appeals from the parish of Plaquemines are returnable to this Court at New Orleans on the first and third Mondays of each month of the session here.

This appeal should therefore have been made returnable on the first Monday of November, 1885, unless the judge had the legal discretion or authority to select a different day.

Section 47 of the act provides in substance: That in all cases of appeal, the judge of the court from which it is taken shall make the appeal returnable to the Supreme Court at the next return day for appeals from the parish, if there shall be time enough after granting it to give the notice required by law and to prepare the record; if not, then he shall fix the return day for some day within the next term after the appeal is granted.

In this case the order contains the information that the record could

not be prepared in time for the ensuing term. But appellee contends that the statement is erroneous, and in support of the contention her counsel presents two certificates to which he directs our attention.

In granting the order as framed by appellant's counsel, the judge must in law be held to have adopted the statement for the necessity of a change of the regular return day, as well as his suggestion of the return day itself. Hence, this Court is authorized to conclude and it must therefore hold, that in the opinion of the judge *a quo* there was not sufficient time to prepare the record by the next regular return day.

That statement is part of the record, the size of the transcript corroborates its truth, and we find nothing in the record to contradict it.

We cannot and we shall certainly not go out of the record for evidence to contradict that which appears in the record. Hence, we must decline to consider either the certificates annexed by appellee or the counter affidavit filed by appellant's counsel. Wooten vs. LeBlanc, 32 Ann. 695.

We cannot presume that the judge in allowing the statement to be of record, that more time was necessary to prepare the transcript, meant to say otherwise, or erred in the statement which, under the effect of his ruling, became his own.

It is not even intimated that any attempt was made to deceive him, or to obtain any undue advantage over the appellee. The appeal taken is devolutive, and it could have been brought up by petition at any time within the year.

We have considered the cases relied on by appellee; they are not applicable to the restricted issue involved in this motion.

In those cases the motion hinged upon a motion day absolutely erroneous under the law, in which the judge transgressed the law at the suggestion of appellant, whereas in the instant case the inquiry is directed to the exercise of legal discretion by the judge of the court whence the appeal was taken. Wooten vs. LeBlanc, 32 Ann. 692; State ex rel. Lee vs. Jumel, 35 Ann. 980.

In the present order the judge has acted within the bounds of the legal discretion vested in him, and the appeal must be sustained.

The motion to dismiss this appeal is therefore overruled, with costs.

## ON THE MERITS.

WATKINS, J. At the suit of the defendant a judgment was rendered, decreeing a separation from bed and board, and a separation of property, and *dissolution* of the community theretofore existing between herself and plaintiff.

Bartoli vs. Huguenard.

The plaintiff brings this suit for a *settlement* of the community between himself and wife, "from the date of their marriage, on the 3d of February, 1873, to the date of the judgment, April 25, 1885."

He alleges that defendant has tacitly renounced all her rights in the community having failed to signify her acceptance of it within the time prescribed by law, and hence he is owner of the entire community property in his own *individual* right.

He claims that the *revenues* and *crops* of defendant's paraphernal property, during the existence of the community, amounted to $17,100 ; and that he advanced about $1000 for the benefit of defendant's separate property.

He claims further that the community owns a stock of goods, kept in a store on defendant's property, worth $600, with some outstandings, of small value.

He claims further that he "has placed repairs on said store to the amount of $80, out of *his* separate means ; and upon the defendant's separate property, *through his own labor, material, bills paid, improvements in the way of ditches, fences, cultivation and other works, and repairs*, to the amount of $7000.

He prays judgment against defendant for the $18,330, and that he be decreed the owner of all the community property.

There was judgment for the defendant in the court below, and plaintiff has appealed.

I.

The salient facts are these :

When defendant married the plaintiff she was Widow Virginia Rogas, and as such, the owner, in *her own* right, of one-half of the community theretofore existing between herself and Felix Rogas ; and the half inherited by the children of the marriage was adjudicated to her, upon an order of court, on July 30, 1874, thereby investing her with full and complete title.

The property consisted of two pieces of improved real estate, situated in parish of Plaquemines, valued at $10,000, and movable effects valued at $4,725 82. There were, also, two pieces of property in New Orleans valued at $12,500.

The value of the entire amount of her separate estate aggregated $27,275 82.

At the time of the marriage, the plaintiff was possessed of *no means or property of any kind.*

The defendant was the mother of four children by her former marriage, two of them minors.

After the marriage with plaintiff, she settled with her children by making sales of her separate estate.

The whole of the defendant's separate property passed under her husband's administration, and the *fruits and revenues* thereof fell into the new community.

Defendant does not deny that she has renounced and abandoned the community; and avers that she owes the plaintiff nothing; and that her separate property has been in no way benefited, or improved by the community, or its value enhanced.

At the dissolution of the community, by the judgment, there was *no community property on hand*, except the *claims* enumerated against defendant, as assets.

A quantity of testimony was introduced in the court below, for the purpose of proving that the plaintiff was a sober, industrious, hard-working man ; and that the value of the orange crops produced annually, on defendant's separate property, had greatly *increased*, under his management, and were *sold for more money* than theretofore.

But the fruits of the paraphernal property were not *in esse* at the dissolution of the community. They had been *used* and *consumed* during the husband's administration, and, presumably, for the account of the community. They were absolutely at the plaintiff's disposal. R. C. C. 2404.

## II.

The matrimonial community is not a partnership. R. C. C. 2807 ; 32 Ann. 792, Succession of Cason.

Therefore, there can be had no reckoning, as between the members, *inter sese,* as to the *quantum* of labor bestowed, or capital, by either withdrawn. The legal import of the words " community property " is *a community of property.*

R. C. C. 3401 declares that the community consists of " the *profits* of all the effects of which the husband has the administration, and enjoyment, either of right or in fact, of the *produce* of their *reciprocal* labor and industry of both husband and wife, etc."

In the same manner, the debts contracted during the marriage enter into the community, and must be acquitted out of the common property. R. C. C. 2403.

*At the dissolution* of the community, " all effects which both husband and wife reciprocally possess, are presumed common effects, or gains," until the contrary is shown. R. C. C. 2405.

It is provided by R. C. C. 2406, that " the effects which compose the *      *      community of gains, are divided into two *equal* portions be-

tween the husband and wife, or between the heirs, *at the dissolution* of the marriage; and it is the same with respect to the *profits* arising from the effects which both husband and wife brought reciprocally in marriage, and which have been administered by the husband, or by the husband and wife conjointly, *although what has thus been brought in marriage, by either the husband or wife, be more considerable than what has been brought by the other, or even although one of the two did not bring anything at all.*

When the effects of the community are partitioned, the husband and wife are equally liable for the debts contracted during the marriage. R. C. C. 2409.

But the wife may exonerate herself from them by renouncing the community. R. C. C. 2410.

She thereby loses all right to the community assets; but she may retake her paraphernal property. R. C. C. 2411.

The wife, separated from bed and board, who has not evinced her intention to accept the community, within the time allowed to beneficiary heirs for deliberating, is presumed to have renounced it. R. C. C. 2414, 2420; 12 Ann. 76.

"The *distinct* interests of the parties attach at the *dissolution* of the marriage, subject to the right of the wife, or her heirs to renounce, and be exonerated from community debts." 9 La. 583, German vs. Gay; 4 O. S. 652, Gale vs. Davis.

"Although the *distinct* interests of the wife or her representatives *attach at the dissolution* of the marriage, subject to the right to renounce, they can claim nothing until the debts be paid. *They cannot sue for half the* price of any *specific* property acquired during the marriage, *where the liquidation* of the *community does not show any gains to be divided."* 1 R. 378; 7 R. 378; 2 Ann. 30.

"In settling a community between a surviving partner and the heirs of the deceased, particular reference must be had to its affairs at the *dissolution.*" 16 La. 40, Thibodeaux vs. Thibodeaux.

"The property, found at the *dissolution* of the marriage, *constitutes the body of acquets and gains."*

Reduced to this last analysis, this suit is for the recovery from the *wife* of one half of the alleged *profits of her separate property, while under the administration of the plaintiff,* and which he had the right to use at pleasure, and *his* alienation and enjoyment thereof could not have been prevented by the wife; and the whole of which have been consumed by the community, and *not one tithe of which is now in existence.*

27

The effect of his recovery would be to entitle him to take from the wife's *separate* property enough to reimburse him, and thus confiscate her estate.

If such an interpretation be placed upon the provisions of the Code in relation to the community of acquets and gains, the paraphernal property of the wife would be completely at the mercy of the husband. By his administration its fruits and revenues become subjected to his absolute control; and the wife is powerless to restrain either his *use* or *abuse* of them.

But when used and consumed—according to plaintiff's theory—he is entitled to cast up all accounts, for the value of his labor, material employed, bills paid, cost of cultivation of crops and the value of crops produced and sold during the community, and charge up to the wife's debit one half and collect it out of her separate estate.

In our view of the law, it is subject to no such construction.

The partition and settlement of the community must be predicated upon the condition of things *at the date of its dissolution.* Whatever property there is remaining at that date, is subject to the payment of community debts and the *residue* may be divided between the spouses. If the debts exceed the value of the property, or there be a likelihood of it, the wife may relieve herself from responsibility by making a renunciation. But, in no event, can any part of the *expenses* or *expenditures* of the community be charged against the wife's separate property.

To permit this to be done would be to violate a prohibitory law.

"The wife, whether separate in property by control or judgment, or not separated, cannot bind herself for her husband, or conjointly with him, for debts contracted by him before or during the marriage." R. C. C. 2398.

The law could contradict itself by denying the wife the power to bind herself for debts contracted by the husband, and yet authorize the husband to use and consume the property of the community and charge her separate property, without her consent, for its value.

This view of the law dispenses us from the necessity of passing upon plaintiff's bill of exceptions, reserved to the rejection by the court of the evidence of his witness, Antonio Piaggini, which had been taken on a former trial and which comes up with the record annexed to the bill. It would be of no avail.

III.

With respect to the plaintiff's claim for improvements placed, during the existence of the community, upon the wife's separate property,

whereby its value became enhanced; and for debts of the wife paid by the community, the proof is desultory and unsatisfactory.

The Code provides that when the separate property of *either* spouse has been *increased* or *improved* during the marriage, the other shall be entitled to one half the value of the increase, "but there shall be no reward due if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or the chances of trade." R. C. C. 2408. 2 Ann. 30, Depas vs. Ruz; 6 R. 514; 4 R. R. 236; 33 Ann. 540, Succession of Roth; 38 Ann. 700, Succession of Foreman; 38 Ann. 728, Succession of Beaux.

The evidence fails to establish plaintiff's demands.

Judgment affirmed.